CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED
MAY 02 2008
JOHN F. CORCORAN, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ROGER LEE MARTIN, JR., | ) | |
| Plaintiff, | ) | Civil Action No. 7:08-cv-00296 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| BLUE RIDGE REGIONAL JAIL, et. al., | ) | By: Hon. James C. Turk |
| Defendants. | ) | Senior United States District Judge |

Plaintiff Roger Lee Martin, a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. §1983, with jurisdiction vested under 28 U.S.C. §1343. In his complaint, Martin alleges that officials at the Lynchburg Adult Detention Center ("LADC") have violated his rights by bringing a false disciplinary charge against him, which in turn, caused his custody level to be increased, caused his work release status to be revoked, and caused him to be assigned to segregated housing. He also states that he fears for his life, because his co-defendant has told other inmates that Martin cooperated with law enforcement. Martin sues the Blue Ridge Regional Jail and the Lynchburg Adult Detention Center, but does not state what sort of relief he seeks in this court action. Upon consideration of the complaint, the court finds that this action should be dismissed pursuant to 28 U.S.C. §1915A(b)(1) for failure to state a claim upon which relief may be granted.[1]

I

Construing his complaint liberally, the court understands Martin to be alleging the following sequence of facts from which his claims arise. Originally, Martin was assigned to the LADC on

---

[1] A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under §1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

1

court-ordered work release status. His intended job at McDonald's did not work out. Then, Corporal Shoemate allegedly brought a "fabricated institutional charge" against Martin. He was convicted, his security level was increased from 6 to 14 as he was deemed an escape risk, and was assigned to a maximum security, segregated housing unit.[2] This unit is on 23-hour lock down and sometimes 32-hour lock down, depending on the schedule. Martin asserts that housing him under these restrictive conditions is a misuse of power and violates his rights.

Martin also complains that he is frightened to stay in the same jail facility as his co-defendant. Although he admits that he and his co-defendant have no contact with each other, he stated in a grievance attached to the complaint that the co-defendant told other inmates that Martin was "on his paperwork" and had "busted him." Martin told jail officials that other inmates were "riding" him and that he had had "piss under his door," causing him to believe that he is in danger because of his cooperation with authorities in his co-defendant's case. He asked for a transfer on this basis, but that request was denied.

II

To state a cause of action under §1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). As a preliminary matter, plaintiff cannot maintain his action against the Jail, since local jails are not "persons" subject to suit under 42 U.S.C. §1983. See McCoy v. Chesapeake Correctional Center, 788 F. Supp. 890 (E.D. Va. 1992). Because he has no attorney assisting him,

---

[2]The copies of a grievance response that he submits with his complaint indicate that at some point, he was found to have been manipulating his blood pressure so that he would be taken to the emergency room.

the court could allow him to amend his complaint to name other defendants. The court finds no need to take such measures, however, because Martin's allegations fail to state any § 1983 claim against anyone.

Martin complains that his troubles at the LADC began when an officer falsely charged him with violating a jail disciplinary regulation. Martin was found guilty and reclassified and moved to segregation as a result of that disciplinary conviction. The allegation that the disciplinary charge was "false," however, does not state a claim that the inmate's rights were violated. See Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir.1986) (holding that "the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges"); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir.1984) (finding that so long as prison officials provide a prisoner with the proper procedural requirements related to a disciplinary charge, then the prisoner has not suffered a constitutional violation). Martin does not allege that he was denied notice and a hearing related to the allegedly false disciplinary charge. Thus, he fails to state any § 1983 claim related to the charge.

Martin's primary concern is the fact that he has not been put on work release status as the state court ordered. Inmates have no constitutional right to work release or to other job opportunities while incarcerated. See, e.g., Callender v. Sioux City Residential Treatment Facility, 88 F.3d 666, 669 (8th Cir. 1996); Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir.1980). Moreover, as Virginia's work release statute does not create any federally protected liberty interest, imperfections in the process by which an inmate is denied work release do not state any federal due process claim. See Gaston v. Taylor, 946 f.2d 340, 344 (4th Cir. 1991). A state official's failure to abide by state

procedural laws or regulations does not present a federal due process issue, Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990), and is, therefore, not actionable under §1983.

Under these principles, Martin's allegations regarding deprivation of his work release status do not state any constitutional claim actionable under § 1983. He had no constitutional right to be on work release, and the fact that the state court ordered him to be on work release status did not create any right to federal procedural protections before that status could be changed. If state officials failed to follow some state regulations regarding implementation of work release, these omissions under state law do not give rise to any claim independently actionable under § 1983. Moreover, because the court will dismiss all other federal claims presented by Martin's complaint, the court declines to exercise supplemental jurisdiction over any possible state law claims, pursuant to 28 U.S.C. § 1367(c).

Martin also complains about being in segregated housing in a maximum security unit. When a defendant is lawfully convicted and confined to jail, he loses a significant interest in his liberty for the period of the sentence. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). For example, inmates have no constitutional right to be housed in any particular prison or in a prison with less restrictive conditions. Meachum v. Fano, 427 U.S. 215, 224 (1976). Nevertheless, confinement does not strip inmates of all liberty interests, and state prison regulations may create liberty interests. Id. Such liberty "interests will be generally limited to the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). In

other words, under Sandin, state prison regulations create a protected liberty interest in avoiding a change in status if the change subjects the inmate to "atypical and significant hardship." Id.

Martin alleges that conditions in segregation at LADC are harsh. However, the United States Court of Appeals for the Fourth Circuit has held that confining segregation inmates for more than six months in conditions much worse than those plaintiff alleges was insufficient to trigger any federal due process right to avoid such conditions. Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997). The Beverati segregation inmates complained of no outside recreation, no clean clothes, less food, and cells infested with vermin and smeared with urine and feces. Id. Martin merely complains that he has limited time outside his cell. His grievances also complain that the sheets and blankets are dirty and he has no one to talk to. Such conditions are not atypical enough to impose "a significant hardship in relation to the ordinary incidents of prison life." Id. Thus, Martin's allegations do not raise any claim under Sandin that he has been deprived of a federally protected liberty interest without due process.

Finally, Martin fears he is in danger from his co-defendant or other inmates who believe that Martin cooperated with authorities. If a prison official knows of a substantial risk of harm to an inmate and is deliberately indifferent to that known risk of harm, the official may be liable for violation of the Eighth Amendment. Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987). A prison official is "deliberately indifferent" only if he acts with a culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Only the knowing disregard of a substantial risk of serious harm to an inmate and failure to take reasonable steps to address the risk violate the Eighth Amendment. Id. at 844.

Martin's allegations simply do not meet this standard. He submits copies of grievances in which he told jail officials that his co-defendant informed other inmates of Martin's cooperation, that other inmates are "riding" him and urinating under his door, and that he wants to be moved to another jail because he is scared. He does not allege facts indicating that he has informed jail officials of any actual threats of harm or described how he is at risk of harm from other inmates while he is in segregation, locked in his cell most of the time. Thus, the court is satisfied that jail officials reasonably believe Martin is protected in the segregation unit from being harmed by other inmates. As Martin's allegations thus do not indicate officials' knowing "disregard of a substantial risk of serious harm," he fails to state any Eighth Amendment claim regarding his alleged need for protection.

For the stated reasons, the court finds that plaintiff's complaint fails to state any constitutional claim and, therefore, must be dismissed for failure to state a claim, pursuant to §1915A(b)(1). An appropriate order shall be entered this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 12th day of May, 2008.

/s/ James C. Turk
Senior United States District Judge